[Cite as *State v. O'Mara*, 2024-Ohio-757.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Appellee | : | C.A. No. 2023-CA-12 |
| v. | : | Trial Court Case No. 2022 CR 212 |
| KRISTI LYNN O'MARA | : | (Criminal Appeal from Common Pleas Court) |
| Appellant | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on March 1, 2024

· · · · · · · · · · ·

ANDREW R. BARNES, Attorney for Appellant

SAMANTHA B. WHETHERHOLT, Attorney for Appellee

· · · · · · · · · · · ·

WELBAUM, J.

{¶ 1} Defendant-Appellant, Kristi Lynn O'Mara, appeals from her conviction and sentence for aggravated possession of drugs in violation of R.C. 2925.11(A)(C)(1)(a), a fifth-degree felony. According to O'Mara, the trial court abused its discretion by sentencing her to an eight-month prison term rather than to community control sanctions.

{¶ 2} We conclude that the appeal is moot, because O'Mara completed her prison

term, was released from prison, and is not on post-release control or other supervision. Because O'Mara is only challenging the trial court's choice of a prison term rather than community control sanctions, there is no relief we can provide. Accordingly, the sole assignment of error will be overruled as moot, and the appeal will be dismissed.

## I. Facts and Course of Proceedings

{¶ 3} On October 3, 2022, an indictment was filed charging O'Mara with two counts of aggravated possession of drugs. The drug in question was methamphetamine. Previously, on August 4, 2022, O'Mara had been a passenger in a car that the police stopped for a traffic violation. After noticing signs of the driver's intoxication as well as an odor of alcohol emanating from the vehicle but not from the driver, a police officer spoke with O'Mara. The officer immediately smelled alcohol when speaking with O'Mara and saw an open can of beer, which was cold to the touch and half-empty. Trial Transcript (Plea Hearing) (Jan. 24, 2023), 24-25. The officer also saw a black purse at O'Mara's feet and received consent to search it, whereupon he found a jeweler's bag with a crystal-like substance in it, a cut green straw with white residue, and other items. *Id.* at 25. The officer confirmed twice with O'Mara that the purse belonged to her. *Id.* The substance in the bag and on the straw was methamphetamine. *Id.*

{¶ 4} At the initial arraignment, O'Mara appeared without counsel, and the court determined she was not indigent. The court therefore released O'Mara on her own recognizance, with standard bond conditions, and set another hearing for November 10, 2022. At the next hearing, O'Mara indicated she had counsel but had not been able to

meet with him yet. She was also late to court, had failed to meet with pretrial services that day as ordered, and had failed to provide a urine screen after her first court appearance. The court ordered O'Mara to report to pretrial services after court, where she would be asked to provide a urine sample. She was also warned that failure to do so would be considered a bond violation. Transcript of Arraignment Hearing (Nov. 10, 2022), 2-5, 7-8, and 10. The court scheduled another hearing for November 17, 2022.

{¶ 5} At the November 17, 2022 hearing, O'Mara was again late and had failed to meet with pretrial services as ordered. The court ordered her to provide a urine sample and return to court afterward. And again, the court warned O'Mara that failure to provide a sample would be another bond violation. Transcript of Arraignment Hearing (Nov. 17, 2022), 1-3.

{¶ 6} On November 18, 2022, the court filed an entry noting that O'Mara had failed to retain an attorney as she had represented. The court therefore appointed counsel for O'Mara. The court also noted three allegations of bond violations for failing to appear at pretrial services as ordered and for failing to provide urine samples. In addition, the court observed another bond violation because O'Mara had failed to complete community service as ordered in Darke County M.C. No. 22 CRB 001-275. As a result, the court suspended O'Mara's bond and ordered her into custody. Journal Entry of Continued Arraignment with Counsel and Second Notification of Bond Violation Allegations (Nov. 18, 2022), 1-2.

{¶ 7} On November 22, 2022, counsel appeared for O'Mara, and O'Mara entered a not guilty plea to the charges. The court deferred consideration of the bond violation

allegations and set a scheduling conference for November 29, 2022. At the scheduling conference, the court set trial for January 24 and 25, 2023, and a final pretrial conference for December 22, 2022. During this conference, O'Mara also admitted all the bond violations, and the court found her guilty. Transcript of Case Scheduling Conference (Nov. 29, 2022), 4 and 6-8. The court then released O'Mara on her own recognizance, with the same bond conditions. *See* Journal Entry of Case Scheduling Conference, Finding of Bond Violations, and Reinstating Bond (Nov. 29, 2022), 1-2.

{¶ 8} On December 9, 2022, O'Mara filed a motion to suppress evidence obtained from a black purse during the August 4, 2022 traffic stop. At the December 22, 2022 suppression hearing, the court noted the following facts: (1) O'Mara had again failed to provide a urine screen; (2) pretrial services had told O'Mara that the initial assessment indicated she would be positive for opiates, amphetamine, and alcohol, and O'Mara's response was that she had been told to lie; and (3) O'Mara had incorrectly represented that her drug assessment facility said she did not need classes (when it had actually recommended completion of 26 non-intensive sessions of the STOP program). Transcript of Motion to Suppress Hearing (Dec. 22, 2022), 2-3. O'Mara then admitted the bond violation, i.e., that she failed to take the urine test. The court found her guilty and indicated this would be a sentencing factor. *Id.* at 4.

{¶ 9} The parties then discussed a plea offer, which was that O'Mara would plead guilty to one count of drug possession, and the State would dismiss the other count and recommend community control sanctions at sentencing. The recommendation was contingent on a number of items, such as that O'Mara not violate bond conditions after

entry of the plea and not be charged with additional offenses. *Id.* at 11-12. After O'Mara stated that she wished to plead guilty, the court conducted a Crim.R. 11(C) colloquy. *Id.* at 19-28. After the colloquy, O'Mara was reticent to admit to guilt; the court therefore gave her more time to consider her plea. O'Mara also withdrew her motion to suppress. *Id.* at 28-34. The court accepted the withdrawal of the motion and continued the final pretrial conference to January 3, 2023. *Id.* at 34-35.

{¶ 10} The court then filed an entry noting these facts, as well as the fact that O'Mara had admitted another bond violation, i.e. that she had failed to provide a urine screen on December 22, 2022. Journal Entry Granting Defendant's Oral Motion to Withdraw Defendant's Motion to Suppress, Continuing Final Pre-trial Conference and Finding Bond Violations (Dec. 22, 2022), 1-2. The court stressed that "[t]he finding of bond violations shall be considered a sentencing factor in the event the Defendant is convicted on an offense in the case at bar." *Id.* at 2.

{¶ 11} At the January 3, 2023 final pretrial, the court noted further bond violations in that O'Mara had again failed to provide a urine screen and had failed to begin counseling as ordered. Transcript of Final Pretrial Hearing (Jan. 3, 2023), 1. O'Mara admitted the violations but claimed she had rescheduled the counseling because of flare-up of a skin condition (MRSA). *Id.* at 3-4. O'Mara also stated she had difficulty providing urine samples because it was "not natural." *Id* at 4. The court stressed that "your delay in going to counseling, the repetitiveness, and your prior positive test suggests strongly to me that you are manipulating." *Id.* at 5.

{¶ 12} The court further emphasized that: "I'm going to tell you, and you need to

remember this very clearly, that your bond violation findings can be used as sentencing factors in trying to determine how to handle your case. And your repetitive disobedience of Court orders is suggesting to me that if you are convicted, we're going to have a problem. You may want to think about that going forward. This is the last time you'll be warned about it." *Id.* O'Mara stated that she understood. *Id.*

{¶ 13} In addition, the court noted that O'Mara had failed to report to pretrial services for fingerprints and DNA as ordered, and it told O'Mara she needed to do that after leaving court that day. *Id.* at 6. Finally, the State indicated that it had just been informed that O'Mara wished to proceed to trial. *Id.* Thereafter, the State made preparations for trial.

{¶ 14} Subsequently, on the first day of the scheduled trial (January 24, 2023), O'Mara withdrew her guilty plea and pled no contest to count one of the indictment. The State agreed to dismiss count two and also agreed to recommend community control, again with the same stipulations as to bond violations, other criminal offenses, and so forth. The court conducted a full Crim.R. 11(C) colloquy, accepted the plea, found O'Mara guilty, ordered a presentence investigation, and set a sentencing hearing for February 21, 2023. *See* Trial Transcript (Jan. 24, 2023), 8-22; No Contest Plea Agreement and Entry (Jan. 24, 2023).

{¶ 15} At the sentencing hearing, the court noted that O'Mara again had failed to provide urine screens on January 30 and February 21, 2023, which by the terms of the bond were considered positive test results. Transcript of Sentencing Hearing (Feb. 21, 2023), 2. O'Mara admitted the violations. *Id.* The court stated that this would be

considered a sentencing factor and that the State was relieved of any sentencing recommendation. *Id.* at 2-3. After the State and defense spoke, the court noted that O'Mara committed the current crime while on probation for a prior crime for which she had failed to complete community service as ordered. This failure occurred while O'Mara was on bond in the current case. *Id.* at 16.

{¶ 16} In addition, the court stressed O'Mara's repeated failure to submit to urine screens as ordered and failure to attend substance abuse counseling as ordered. *Id.* The court concluded that O'Mara would not "comply with court orders designed to successfully manage her drug dependencies and treat mental health issues evolving from past abusive relationships." *Id.* at 17. Finally, the court stated that it found O'Mara deceptive, that she "deflected responsibility for her substance abuse possession and usage," and that the court lacked confidence that community control would deter O'Mara from future crime or promote her effective rehabilitation. *Id.* The court therefore sentenced O'Mara to eight months in prison and a discretionary period of up to two years of post-release control supervision.

{¶ 17} The court then filed a judgment entry for the sentencing. *See* Journal Entry of Judgment, Conviction, and Sentence (Feb. 21, 2023). The following day, the court filed a corrected judgment entry, changing the description of O'Mara's plea from "guilty" to "no contest." The court labeled this a "scrivener's error." Journal Entry of Correction (Feb. 22, 2023). O'Mara then filed a notice of appeal from the two judgments on March 10, 2023.

## II. Abuse of Discretion in Sentencing

{¶ 18} O'Mara's sole assignment of error states that:

The Trial Court Abused Discretion During Sentencing.

{¶ 19} O'Mara contends that the trial court abused its discretion in sentencing her to prison rather than to community control sanctions. According to O'Mara, she requested a blood sample rather than a urine test on every occasion, but her request was denied. She therefore denies that she failed to adhere to the bond guidelines. O'Mara further contends that she qualified under R.C. 2929.13(B)(1) and should have been granted community control.

{¶ 20} In addressing O'Mara's assignment of error, the State contends that O'Mara was released from prison around October 8, 2023, and is not on post-release control. The State therefore maintains that O'Mara's appeal is moot, since her only claim is that the trial court should have sentenced her to community control sanctions instead of prison. O'Mara has not responded to this point.

{¶ 21} "The role of courts is to decide adversarial legal cases and to issue judgments that can be carried into effect." *Cyran v. Cyran*, 152 Ohio St.3d 484, 2018-Ohio-24, 97 N.E.3d 487, ¶ 9. "Under the mootness doctrine, American courts will not decide cases in which there is no longer an actual legal controversy between the parties." *Id.*, citing *In re A.G.*, 139 Ohio St.3d 572, 2014-Ohio-2597, 13 N.E.3d 1146, ¶ 37.

{¶ 22} "Where a defendant, convicted of a criminal offense, has voluntarily paid the fine or completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some

collateral disability or loss of civil rights from such judgment or conviction." *State v. Wilson*, 41 Ohio St.2d 236, 325 N.E.2d 236 (1975), syllabus. However, the Supreme Court of Ohio has also said, with respect to felony cases, that "[a] person convicted of a felony has a substantial stake in the judgment of conviction which survives the satisfaction of the judgment imposed upon him or her. Therefore, an appeal challenging a felony conviction is not moot even if the entire sentence has been satisfied before the matter is heard on appeal." *State v. Golston*, 71 Ohio St.3d 224, 224-225, 643 N.E.2d 109 (1994), syllabus.

{¶ 23} Nonetheless, " '[a]n appeal attacking an already-served felony sentence is moot when there is no indication that the sentence, as opposed to the conviction, will cause the defendant to suffer some collateral disability or loss of civil rights.' " *State v. Clinton*, 2d Dist. Montgomery No. 29267, 2022-Ohio-717, ¶ 10, quoting *State v. Ingledue*, 2d Dist. Clark No. 2018-CA-47, 2019-Ohio-397, ¶ 10. " 'A collateral disability is an adverse legal consequence of a conviction or judgment that survives despite the court's sentence having been satisfied or served.' " *Id.*, quoting *In re S.J.K.*, 114 Ohio St.3d 23, 2007-Ohio-2621, 867 N.E.2d 408, ¶ 10.

{¶ 24} In *Clinton*, we noted our prior decisions which had held that "there is no collateral disability or loss of civil rights under circumstances 'where defendants challenge their sentences and not their convictions, have already completed their sentences, and have not been sentenced to [post-release control].' " *Id.* at ¶ 11, quoting *State v. Hatfield*, 2d Dist. Champaign No. 2017-CA-36, 2019-Ohio-3291, ¶ 15, and citing *Ingledue* at ¶ 10. We stressed that "[i]n such situations, 'there is no remedy we can afford' and therefore

the appeal is moot." *Id.*, quoting *Hatfield* at ¶ 17.

**{¶ 25}** According to the online trial court docket, the Ohio Department of Rehabilitation and Corrections ("ODRC") calculated O'Mara's expected release from prison to be October 10, 2023, with the earliest release date being August 8, 2023. There was also no request at the trial court or in our court to say the sentence pending appeal.

**{¶ 26}** As the State notes, the ODRC has no records pertaining to O'Mara, which means she is not on post-release supervision. *See* https://appgateway.drc.ohio.gov/OffenderSearch/ (accessed Jan. 29, 2024).[1] The trial court case is also closed. Accordingly, because O'Mara is only challenging the trial court's action in sentencing her to prison rather than to community control sanctions, there is simply no relief we could provide.

**{¶ 27}** It is true that O'Mara was ordered to pay a $250 fine and costs of the case (for which the court entered judgment and execution). Judgment Entry, 9. It is unclear whether these items have been paid, as there is no indication on the trial court docket. However, even if this were so, O'Mara has not challenged her fine or court costs; Therefore, she has not asserted any issue for which relief can be granted.

---

[1] Appellate courts commonly "take judicial notice of public[ly] accessible online court dockets." *State v. Estridge*, 2d Dist. Miami No. 2021-CA-25, 2022-Ohio-208, ¶ 12, fn. 1, citing *State v. McClurg*, 2d Dist. Darke No. 2019-CA-15, 2020-Ohio-1144, ¶ 8. *See also State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, 874 N.E.2d 516, ¶ 8 and 10 (finding that a court can take judicial notice of appropriate matters, including judicial opinions and public records accessible from the internet). Therefore, we may consult the trial court docket and the ODRC website, both of which are readily accessible and are public records.

**{¶ 28}** Accordingly, based on the preceding discussion, O'Mara's sole assignment of error is overruled as moot.

### III.   Conclusion

**{¶ 29}** O'Mara's sole assignment of error having been overruled as moot, the appeal is dismissed.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.